UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 19-828-MWF (MAAx)          **Date:  June 3, 2019**

Title:      United Artists Corporation v. United Artist Studios LLC, et al.

Present:    The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
|  |  |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**     ORDER RE: MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANTS [20];
MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6) [21]; MOTION TO
DISMISS CERTAIN OF
COUNTERCLAIMANTS' FIRST AMENDED
COUNTERCLAIMS [36]

Before the Court are three motions:

First, there is Plaintiff United Artists Corporation's Motion for Preliminary Injunction Against Defendants (the "PI Motion"), filed on April 8, 2019.  (Docket No. 20).  On April 15, 2019, Defendants United Artist Studios LLC ("UA Studios"); United Artist Film Festival LLC ("UA Film Festival"); XLI Technologies Inc. ("XLI"); XLI41 L.L.C. ("XLI41"); and James P. Schramm (collectively "Defendants") filed an Opposition.  (Docket No. 24).  Plaintiff filed a Reply on April 29, 2019. (Docket No. 34).

Second, there is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defendants' Motion"), filed on April 9, 2019.  (Docket No. 21).  On April 22, 2019, Plaintiff filed an Opposition.  (Docket No. 32).  Defendants filed a Reply on April 29, 2019.  (Docket No. 35).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

Third, there is Plaintiff's unopposed Motion to Dismiss Certain of Counterclaimants' First Amended Counterclaims ("Plaintiff's Motion"), filed on May 6, 2019.  (Docket No. 36).

The Court has read and considered the papers filed in connection with three motions and held a hearing on June 3, 2019.

For the reasons discussed below, the three motions are ruled upon as follows:

- The PI Motion is **GRANTED**.  Plaintiffs have successfully demonstrated that the law and facts clearly favor the mandatory injunction sought;

- Defendants' Motion is **DENIED**.  Plaintiff's First Amended Complaint adequately alleges facts for all of its claims and the fair use defense does not defeat any of Plaintiff's claims; and

- Plaintiff's Motion is **GRANTED** *with leave to amend*.  Pursuant to Local Rule 7-12, the Court deems Defendants' failure to file an Opposition as consent to the granting of Plaintiff's Motion.

I.      **BACKGROUND**

        A.      **Request for Judicial Notice**

In conjunction with Plaintiff's Motion, Plaintiff requests that the Court take judicial notice of seven trademark registration certificates issued by the United States Patent and Trademark Office ("PTO") and records reflecting their current status.  (*See* Request for Judicial Notice ("RJN") (Docket No. 36-3)).  Defendants do not oppose the RJN.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  An exception to this general rule exists for (1) materials that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

are attached to or necessarily relied upon in the complaint, and (2) matters of public record.  *Id.* at 688–89.

The Court concludes that each of the seven trademark registration certificates is an official public record.  Accordingly, the RJN is **GRANTED**.

## B.    **First Amended Complaint**

On February 5, 2019, Plaintiff commenced this action against Defendants.  (Complaint (Docket No. 2)).  Plaintiff filed its First Amended Complaint ("FAC") as of right on March 26, 2019.  (Docket No. 17).

Plaintiff's operative FAC contains the following allegations:

Plaintiff is a Delaware corporation with its principal place of business in California.  (*Id.* ¶ 4).  Defendants UA Studios, UA Film Festival, XLI, and XLI41 are Nevada corporations doing business in California and are alleged to be related corporations.  (*Id.* ¶¶ 5–8, 10).  Mr. Schramm is an individual residing in Nevada and the principal of UA Studios, UA Film Festival, XLI, and XLI41.  (*Id.* ¶ 9).

Plaintiff—founded in February 1919 by D.W. Griffith, Charlie Chaplain, Mary Pickford, and Douglas Fairbanks—has been active in the motion picture industry for a century.  (*Id.* ¶ 13).  Plaintiff has produced and distributed films, television programs, and related entertainment products, and also has been involved continuously in motion picture and television financing, production, and distribution services.  (*Id.*).

Plaintiff has "produced or distributed many of cinema's greatest masterpieces and commercial successes," including *Modern Times* (1936), *A Star is Born* (1937), *Stagecoach* (1939), *High Noon* (1952), *Marty* (1955), *12 Angry Men* (1957), *The Apartment* (1960), *West Side Story* (1961), *In the Heat of the Night* (1967), *Midnight Cowboy* (1969), *Fiddler on the Roof* (1971), *One Flew Over the Cuckoo's Nest* (1975), *Network* (1976), *Annie Hall* (1977), *Apocalypse Now* (1979), *Raging Bull* (1980), *Rain Man* (1988), *The Thomas Crown Affair* (1999), *Capote* (2005), and *Valkyrie* (2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-828-MWF (MAAx)               Date:  June 3, 2019**

Title:      United Artists Corporation v. United Artist Studios LLC, et al.

(*Id.* ¶ 14).  Plaintiff has also produced several television shows such as *Survivor*, *Shark Tank*, and *The Voice*.  (*Id.*).

Twelve of Plaintiff's motion pictures have won the Academy Award for Best Picture and 20 of Plaintiff's motion pictures are listed in the American Film Institute's 2007 list of the 100 greatest American films.  (Declaration of R. Holland Campbell ("Campbell Decl.") ¶¶ 3–4 (Docket No. 20-2).  Since 2009, Plaintiff's library of motion pictures has collectively grossed more than $5.3 billion.  (*Id.* ¶ 8).  More recently, on February 5, 2019, Metro-Goldwyn-Mayer Studios Inc. (Plaintiff's parent company) and Annapurna Pictures "announced that they were expanding their theatrical distribution joint venture and rebranding it United Artists Releasing."  (FAC ¶ 14 (emphasis omitted)).

Plaintiff has undertaken its production and distribution activities under various versions of its trademarks (the "UNITED ARTISTS Marks") as follows:

| Mark | Registration Number | Class and Goods / Services | Registration Date |
|---|---|---|---|
| UNITED ARTISTS | 1,624,112 | Class 41: Entertainment services, namely, production and distribution of motion pictures | November 20, 1990 |
|  | 1,625,273 | Class 41: Entertainment services, namely, production and distribution of motion pictures | November 20, 1990 |
|  | 2,091,641 | Class 9: pre-recorded video tapes and video discs and motion picture films whose subject matter is entertainment, namely, action | August 26, 1997 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-828-MWF (MAAx)**          **Date:  June 3, 2019**

Title:      United Artists Corporation v. United Artist Studios LLC, et al.

| | | | |
|---|---|---|---|
| | | adventure, comedy, drama, literary, historical, biographical and suspense themes; cartoons<br><br>Class 16: posters, film guides, film programs and books whose subject matter covers all topics related to motion picture films, including the history thereof and individuals featured in motion pictures<br><br>Class 41: entertainment services, namely, production and distribution of motion pictures | |
| UA | 3,431,329 | Class 9: Motion picture films featuring entertainment, namely, action adventures, dramas, comedies, romances, science fiction, horror and mysteries; pre-recorded video discs and DVDs featuring entertainment<br><br>Class 41: Entertainment services, namely, production and distribution of a series of theatrical motion pictures; providing a website featuring | May 20, 2008 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

| | | motion pictures and television programming | |
|---|---|---|---|
| UNITED ARTISTS MEDIA GROUP | 4,856,577 | Class 41: Entertainment services, namely, production and distribution of motion pictures | November 17, 2015 |
| UNITED ARTISTS MEDIA GROUP | 4,856,615 | Class 41: Entertainment services, namely, production and distribution of motion pictures | November 17, 2015 |
|  | 4,856,661 | Class 41: Entertainment services, namely, production and distribution of motion pictures | November 17, 2015 |

(*Id.* ¶ 15; *see* RJN).

UA Studios operated www.unitedartiststudios.com and claimed that it has trademark rights in both "United Artist Studio" and "United Artist Film Festival." (FAC ¶ 17).  Until recently, UA Studios identified itself as a "motion picture entertainment company."  (*Id.*).  In August 2018, Plaintiff became aware of US Studios' alleged trademark infringement and, beginning in September 2018, sent several cease-and-desist letters concerning the use of the name "United Artist."  (*Id.* ¶¶ 17, 21–25).

After receiving Plaintiff's initial cease-and-desist letter, UA Studios "replaced the words 'a motion picture entertainment company' with 'a multi-media entertainment film studio and conglomerate.'"  (*Id.*).  Since this action commenced, UA Studios again changed its website and description, now referring to itself as "a multimedia studio."  (Declaration of Paul A. Bost Dated April 8, 2019 ("Bost Decl. I") ¶ 7 (Docket No. 20-3)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

When Plaintiff accessed UA Studios' website, UA Studios listed three services it offers: (1) "Online Film Festival," with a link to www.unitedartistfilmfestival.com; (2) "Media/Finance"; and (3) "Exclusive Membership."  (*Id.* ¶ 8).  Only "Online Film Festival" contained an active link, and no additional information is provided about the other two services.  (*Id.*).  UA Film Festival operated (and presumably still operates) ww.unitedartistfilmfestival.com and "prominently use[d] the United Artist Film Festival mark as the name of a film festival."  (FAC ¶ 18 (emphasis removed)).  UA Film Festival's website stated that "[p]roduction support and Theatrical Distribution provided by XLI41" and "[m]edia support provided by United Artist Studios."  (*Id.* ¶ 19).

As to operations, UA Film Festival stated that it is "the only film festival that guarantees a commercial studio level theatrical distribution deal (release) for ALL winners (1st, 2nd and 3rd place)" and that it "will broadcast [its] annual event on several national and international TV networks reaching America as well as 120 countries."  (*Id.*).  Plaintiff alleges that United Artist Film Festival "solicits filmmakers to submit their feature films, documentary and short films, theatrical trailers, and music videos for consideration in the [film festival]," with entry fees ranging from $50 to $200.  (*Id.* ¶ 20).

The first annual festival appeared to have been scheduled for December 14, 2018.  (*Id.*).  Plaintiff alleges that it "has not been able to uncover any evidence of an award ceremony event ever taking place, much less being broadcast in the manner or scope stated by [UA Film Festival]."  (*Id.* ¶ 19).  At the beginning of February 2019, UA Film Festival's website was updated to state that "all finalist [sic] will be listed here by [February] 1, 2019" and that the "2018 winners will be announced [February] 3, 2019."  (*Id.*).  Plaintiff alleges that "winners of the purported film festival were only identified . . . after [Plaintiff] filed its initial complaint in this case."  (*Id.*).

Defendants "have not ceased their unlawful activities and continue to infringe and otherwise violated [Plaintiff's] property rights."  (*Id.* ¶ 26).  For instance, on February 8, 2019, Mr. Schramm filed the following two applications with the PTO (the "UNITED ARTIST Marks"):

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-828-MWF (MAAx)**              **Date:  June 3, 2019**

Title:       United Artists Corporation v. United Artist Studios LLC, et al.

| Mark | Serial Number | Class and Goods / Services | Alleged Date of First Use |
|---|---|---|---|
| UNITED ARTIST STUDIOS | 88/295,004 | Class 35: Advertising, marketing and promotion services | May 30, 2018 |
| UNITED ARTIST FILM FESTIVAL | 88/294,846 | Class 41: Entertainment services, namely, planning and conducting a series of film festivals | May 30, 2018 |

(*Id.*).  Mr. Schramm indicated that he is doing business as XLI and provided the PTO with an email address for himself using the "@xli41.com" domain name extension. (*Id.*).

On April 23, 2019, the PTO declined to grant the applications and indicated that "[r]egistration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 1624112, 1625273, 2091641, 4856577, 4856615, and 4856661, which are all owned by [Plaintiff]."  (Declaration of Paul A. Bost Dated April 29, 2019 ("Bost Decl. II") ¶¶ 8–9, Exs. C–D (Docket No. 34-1)).

As a result of this conduct, Plaintiff asserts eight claims for relief under the Lanham Act. 15 U.S.C. § 1114 *et seq.*, and state laws: (1) federal trademark infringement; (2) federal false designation of origin and association; (3) federal trademark dilution; (4) cyberpiracy; (5) state common law trademark infringement; (6) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200; (7) violation of state common law unfair competition; and (8) cancellation of trademark registrations.  (FAC ¶¶ 29–81).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019
Title:       United Artists Corporation v. United Artist Studios LLC, et al.

### C.    First Amended Counterclaim

On March 22, 2019, Defendants answered the original Complaint and filed counterclaims against Plaintiff.  (Docket No. 14).  Like Plaintiff, Defendants filed their First Amended Counterclaim ("FACC") as of right on April 22, 2019.  (Docket No. 30).

Defendants' operative FACC contains the following allegations:

Defendants "wanted to create a film festival that brought all independent actors, directors, writers and producers (independent film makers) together in one positive group for one positive purpose" and also wanted the name of the group to be singular rather than plural.  (*Id.* ¶ 3).  Defendants noticed that "all film festivals do not have that purpose and direction" and "searched online for one word that summed up all the talent, creative and artistic people and one word that summed up bringing many people together to form one group that has a purpose."  (*Id.*).  Defendants then came up with "United" and "Artist."  (*Id.* ¶¶ 4–5).

As to the word "Studio," Defendants "sought to have a location/place where these artists could go and use as their workplace for networking, workroom location, study, research and support (media and promotions) and be in position to have their project acquired."  (*Id.* ¶ 6).  Putting together these ideas, Defendants created "United Artist Studios."  (*Id.*).

UA Studios has "always been a multi-media entertainment company with respect to independent actors, directors, writers and producers (independent film makers)," rather than "producing and distributing commercial films and televisions series."  (*See id.* ¶¶ 7–8).  Defendants also allege that there is no evidence of consumer confusion or to suggest that a reasonable consumer would associate UA Studios with Plaintiff.  (*Id.* ¶¶ 9–10).  Defendants further allege that UA Studios and Plaintiff "are not in competition" with each other.  (*Id.* ¶ 13; *see also id.* ¶¶ 15–20).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

Defendants also allege that on three separate occasions within the last two years, Plaintiff proposed to purchase UA Studios and UA Film Festival.  (*See id.* ¶ 24). When Defendants refused, Plaintiff made "threatening phone calls," issued at least one negative press release about Defendants, and sent several cease-and-desist letters. (*Id.*).  Defendants additionally allege that Plaintiff was always aware that Defendants "have a contractual clause with their clients and/or investors that if [Defendants] are involved in litigation," then that would "result in a cessation to current and potential business, investment opportunities and revenue."  (*Id.* ¶¶ 25–26).  Defendants contend that this present action was commenced to "disrupt these contracts or relationships and . . . exert[] undue pressure [on Defendants so Plaintiff would] unfairly monopolize the market place . . . ."  (*Id.* ¶ 28).  Defendants allege a loss of revenue and investment opportunities of at least $150 million.  (*Id.* ¶¶ 30, 37).

Defendants separately contend that the manner in which Mr. Schramm was served in this action is "completely unfortunate."  (*Id.* ¶ 22).  Rather than serving Mr. Schramm at the registered agent's address for service of process, a process server served him "in a private gated community by throwing a large, heavy bound document through the car window and hitting [Mr.] Schramm directly in the face."  (*Id.*).  The process server is alleged to have "trespass[ed] onto [Mr.] Schramm's property and potentially physically assault[ed] him."  (*Id.* ¶ 23).

As a result of these conduct, Defendants assert nine claims for relief under the Lanham Act and state laws: (1) invalidity, unenforceability, and non-infringement of the UNITED ARTISTS Marks; (2) declaratory relief for no unfair competition; (3) declaratory relief for no federal trademark dilution; (4) declaratory relief for no false designation of origin and association; (5) declaratory relief for no cyberpiracy; (6) intentional interference with contractual relations; (7) violation of the UCL; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress.  (*Id.* ¶¶ 39–113).  Claims eight and nine are asserted by only Mr. Schramm.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                    Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

## II.   **THE PI MOTION**

### A.   **Legal Standard**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (rejecting "possibility" standard and holding that plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction").  "A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2007).

"[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006); *see also Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004) (reasoning that, where a nonmovant would bear the burden of persuasion at trial, the movant seeking a preliminary injunction "must be deemed likely to prevail" if the nonmovant fails to make an adequate showing).

As to the specific relief sought, "[a] preliminary injunction can take two forms." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009).  *First*, "[a] prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'"  *Id*. (quoting *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)).  *Second*, "[a] mandatory injunction 'orders a responsible party to take action.'"  *Id*. at 879 (quoting *Meghrig v. KFC W., Inc*., 516 U.S. 479, 484 (1996)) (internal quotation marks omitted).  "A mandatory injunction 'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'"  *Id*. (alterations in original) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

Here, Plaintiff seeks to preliminarily enjoin Defendants from, among other actions, using any of its trademarks, implying Plaintiff's approval or endorsement, operating under the name UA Studios or UA Film Festival, or representing that Defendants are in any way sponsored by Plaintiff.  (Proposed Order (Docket No. 20-4)).  It is clear, then, that what Plaintiff seeks is affirmative implementation of a course of action, and the relief would go beyond maintaining the status quo.

"In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'"  *Marlyn Nutraceuticals, Inc.,* 571 F.3d at 879 (quoting *Anderson*, 612 F.2d at 1115).  Indeed, the Ninth Circuit has many times discussed the nature of mandatory injunctions.  *See, e.g.*, *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("In plain terms, mandatory injunctions should not issue in 'doubtful cases.'") (citations omitted); *Working Washington v. Cent. Puget Sound Reg'l Transit Auth.*, 533 F. App'x 716, 718 (9th Cir. 2013) ("Thus, 'mandatory preliminary relief is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.'") (citations omitted); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (discussing the standards articulated in *Anderson*).

As to the general preliminary injunction standard to be applied, Defendants present the sliding scale approach and note that "serious questions regarding the merits have been raised and the balance of hardships tips sharply in the movant's favor" can support issuance of a preliminary injunction.  (PI Opp. at 6); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir.), *cert. denied*, 134 S. Ct. 2877 (2014) ("We have held that a 'likelihood' of success per se is not an absolute requirement" (citing *Cottrell*, 632 F.3d at 1131–32)); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) ("Under our 'sliding scale' approach to evaluating the first and third *Winter* elements, a preliminary injunction may be granted when there are 'serious questions going to the merits and a hardship balance that tips

---

**CIVIL MINUTES—GENERAL**                                        **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019
Title:       United Artists Corporation v. United Artist Studios LLC, et al.

sharply toward the plaintiff,' so long as 'the other two elements of the *Winter* test are also met'" (quoting *Cottrell*, 632 F.3d at 1131–32)).

Some district courts have observed that *Cottrell* may be in tension with the Supreme Court's ruling in *Winter*, as well as the Ninth Circuit's adoption of *Winter*, as evidenced in *American Trucking Association, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) and *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).  *See, e.g., S.E.C. v. Banc de Binary Ltd.,* 964 F. Supp. 2d 1229, 1233 (D. Nev. 2013) (noting that *Cottrell*'s "serious questions" sliding scale test "presents some difficulty in light of *Winter* and *Selecky*," and consequently interpreting "serious questions going to the merits" as meaning "that there is at least a reasonable probability of success on the merits" so as to satisfy *Winter*'s requirement that success on the merits is "likely"); *Campbell v. Feld Entm't Inc.,* No. 12-cv-4233-LHK, 2013 WL 4510629, at *4 (N.D. Cal. Aug. 22, 2013) ("The Court finds, however, that this 'serious questions' standard is in tension with *Winter* and prior Ninth Circuit case law rejecting any earlier standards that are lower than the standard in *Winter*."); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1141 (C.D. Cal. 2012) ("The Court will not apply the standard set forth in *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011), as it views that standard as being in conflict with both the Supreme Court's ruling in *Winter* and the Ninth Circuit's own subsequent adoption of the *Winter* standard.").

The Ninth Circuit has recently reiterated, while evaluating the propriety of a mandatory injunction, that "[b]ecause it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements].'"  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)) (internal quotation marks omitted).

Because Plaintiff seeks a mandatory injunction, the Court declines to interpret the "serious questions" standard for purposes of the PI Motion as inconsistent with the Ninth Circuit's guidance that a mandatory injunction not issue in "doubtful cases" and not be granted "unless the facts and law clearly favor the moving party."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)          Date:  June 3, 2019

Title:       United Artists Corporation v. United Artist Studios LLC, et al.

Mindful of the standards discussed above, the Court will proceed to evaluate the arguments made in connection with the PI Motion.

## B.   **Discussion**

### 1.   **Likelihood of Success on the Merits**

Plaintiff argues that it is likely to prevail on the merits of its trademark infringement and unfair competition claims.  (PI Mot. at 14–20).

To succeed on its claim of trademark infringement, Plaintiff must show that (1) it has a protected ownership interest in the UNITED ARTISTS Marks, and (2) Defendants' use of those marks is likely to cause consumer confusion.  There is no dispute that Plaintiff meets the first element and has a protected ownership interest in the UNITED ARTISTS Marks.  *See Pom Wonderful LLC v. Hubbard, Jr.*, 775 F.3d 1118, 1124 (9th Cir. 2014) (concluding that registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration).  Therefore, "[t]he core element of trademark infringement is whether customers are likely to be confused about the source or sponsorship of the products." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135–1136 (9th Cir. 2006) (holding district court decision on similarity of two marks was not clearly erroneous despite lack of identical resemblance).

A finding of likelihood of confusion will also support Plaintiff's claims of unfair competition.  *See Walter v. Jeremyel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) ("[T]he test for false designation under the Lanham Act, as well as the common law and statutory unfair competition claims, is whether there was a 'likelihood of confusion.'"); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business & Professions Code [section] 17200 are 'substantially congruent' to claims made under the Lanham Act.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                Date:  June 3, 2019
Title:       United Artists Corporation v. United Artist Studios LLC, et al.

To evaluate whether Plaintiff is likely to succeed on the merits, the Court must determine whether Plaintiff can show that there is a likelihood of confusion among consumers between the UNITED ARTISTS Marks and the UNITED ARTIST Marks. *Pom Wonderful*, 775 F.3d at 1125 (finding district court erred in not granting preliminary injunction to pomegranate juice company against competitor with "many obvious visual similarities" in its mark).  In evaluating the likelihood of confusion, the Court employs the eight-factor test articulated by the Ninth Circuit in *AMG Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979).  These factors are:

1.   the similarity of the marks
2.   the proximity of the goods covered by the marks,
3.   the strength of the claimed mark,
4.   similarity of marketing or advertising channels,
5.   the degree of care likely to be exercised by the purchaser,
6.   actual confusion over the marks,
7.   the intent of defendants, and
8.   likelihood of expansion of the product lines.

The Court is to consider the *Sleekcraft* factors holistically and not treat them as a mere checklist.  *Pom Wonderful*, 775 F.3d at 1125 ("[D]espite the important role that the *Sleekcraft* factors play in determining whether a likelihood of confusion exists, it is the totality of facts in a given case that is dispositive.").

Because the parties raise arguments as to only five factors—similarity of the marks, proximity of goods covered by the marks, strength of the claimed mark, actual confusion over the marks, and intent of Defendants—the Court will therefore limit its analysis to those five factors.

a.     *Similarity of the marks*

First, the Court considers the similarity of the marks.  As the Ninth Circuit explained in *Pom Wonderful*, "[t]his factor is always important in determining whether a likelihood of confusion exists because when 'marks are entirely dissimilar, there is

CIVIL MINUTES—GENERAL                                            15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                    Date:  June 3, 2019
Title:        United Artists Corporation v. United Artist Studios LLC, et al.

no likelihood of confusion.'"  775 F.3d at 1127 (quoting *Brookfield Commc'n v. West Coast Entm't*, 174 F.3d 1036, 1054 (9th Cir. 1999)).  Accordingly, as the similarities between two marks increase, so too does the likelihood of confusion.  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000) (holding that marks were "strikingly similar" when considered with colors as used in commerce despite PTO's determination that they were not confusingly similar based on black and white submission).

In evaluating similarity the following axioms guide the Court: (1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences.  *Pom Wonderful*, 775 F.3d at 1127–28 (citing *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002)).  In considering the marks' similarities, the Court does not dissect the marks, but considers the overall impression they give to consumers.  *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004) ("[W]hat is critical is the overall appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks").

Here, the Court concludes that the two marks are nearly identical.  The marks' primary feature—"United Artists" and "United Artist"—are identical except for Defendants' omission of the letter "s."  Both parties also use the abbreviation "UA." Defendants, for instance, refer to the "UA Film Festival" or the "UA Event."  (*See* Bost Decl. I ¶¶ 3, 11, 13).  Because similarities weigh more heavily than differences, the mere fact that there is an additional "s" is insufficient to distinguish the marks.

Indeed, numerous courts have concluded that there is a strong likelihood of confusion where two marks were phonetically similar and had a one- or two-letter difference.  *See, e.g.*, *Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 836–38 (C.D. Cal. 2018) (finding that the similarity between the "Synoptek" and "Synaptek" marks "rather obvious"); *In re Viterra Inc.*, 671 F.3d 1358, 1367 (Fed. Cir. 2012) (holding that "any minor differences in the sound of [X–Seed and XCEED marks for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)          Date:  June 3, 2019
Title:       United Artists Corporation v. United Artist Studios LLC, et al.

agricultural seeds] may go undetected by consumers and, therefore, would not be sufficient to distinguish the marks").

Moreover, the addition of "Film Festival" or "Studios" in the UNITED ARTIST Marks does not change the analysis.  *See, e.g.*, *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 875 (9th Cir. 2014) (concluding that the "district court did not clearly err in finding that ['La Quinta' and 'Quinta Real'] to be similar" since "the words shared a similar meaning when translated ('country home' and 'royal villa') and an identical dominant word: 'Quinta'"); *Versace v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp.3d 1007, 1015 (N.D. Cal. 2018) (noting that "simply adding words to a mark is not sufficient to distinguish the marks for purposes of consumer confusion"); *Color Image Apparel, Inc. v. Honey*, No. No. 05-CV-9633-GAF (AJWx), 2006 WL 8434610, at *4 (C.D. Cal. Aug. 23, 2006) (granting preliminary injunction and concluding that the defendants' use of the plaintiff's mark, "Bella Honey" versus "Bella," as its "lead word").

The Court is particularly persuaded by the fact that the PTO refused to register Defendants' marks because of a likelihood of confusion with Plaintiff's.  *See Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, No. 06-SACV-0827 AG (RNBx), 2008 WL 1913163, at *8 (C.D. Cal. Mar. 27, 2008) (noting that the "[w]hile PTO's refusal to register a trademark term is not conclusive, it is entitled to 'great weight'") (citations omitted).

Accordingly, the Court concludes that this factor—similarity of the marks— weighs strongly in favor of Plaintiff.

### b.       *Relatedness of services covered by the marks*

The second *Sleekcraft* factor is the similarity of the services covered by the parties' marks.  This factor reflects the common-sense intuition that the danger of consumer confusion is heightened where goods are related or complimentary.  *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) (citing *Sleekcraft*, 599 F.2d at 350).  "Related goods . . . are those which would be reasonably

---

**CIVIL MINUTES—GENERAL**                                                          **17**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                    Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

thought by the buying public to come from the same source if sold under the same mark."  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012) (internal quotation omitted).  To satisfy this factor, parties do not need to be direct competitors, so long as the goods are similar in use and function.  *See Entrepreneur Media*, 279 F.3d at 1147 (explaining that goods are related when both companies offer products relating to the same general industry).

Plaintiff argues that it offers "motion picture and television production and distribution services," and that Defendants purports to offer essentially identical or related services.  (PI Mot. at 17).  For instance, UA Studios was identified as a "motion picture entertainment company," a "multi-media entertainment film studio and conglomerate," and a "multimedia studio."  (*Id.*).  Similarly, UA Film Festival offers services in the motion picture industry and purports to award its winners with theatrical distribution.  (*Id.* at 18).

In opposition, Defendants argue that the parties are not competitors and it would "def[y] logic to suggest that consumers would think that Plaintiff has now started conducting international online film festivals or solely media and promotional support."  (PI Opp. at 10–11).  Defendants also argue that "Plaintiff's entire claim can be boiled down to the simple notion that, because [Plaintiff] is involved with motion pictures in some capacity, no other company can use the generic name 'United Artist.'" (*Id.* at 11).

The Court disagrees with Defendants and finds it difficult to conclude that the services offered by the parties and covered by the UNITED ARTISTS Marks and UNITED ARTIST Marks are dissimilar.  The two services are clearly related such that a consumer would be very likely to conclude that the two products come from the same source.  Plaintiff offers motion picture and television production and distribution.  UA Film Festival's website states that it "is backed and supported by major executives and companies that facilitate major studio releases" with "a combined average of over 20 years of major studio production, distribution, media and marketing" and that "have been part of and facilitated an estimated combined average of over 30 billion dollars in business from producing and releasing motion pictures."  (Bost Decl. I ¶¶ 11, 16).  UA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                    Date:  June 3, 2019
Title:       United Artists Corporation v. United Artist Studios LLC, et al.

Film Festival also "guarantee[s] a commercial studio level theatrical distribution deal (release) for ALL winners."  (*Id.*).

To the extent that Defendants believe the parties are not competitors, Plaintiff "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor."  *Rearden*, 683 F.3d at 1212 (quoting *Sleekcraft*, 599 F.2d at 348 n.10)).  Rather, relatedness of the parties' services exists where they are (1) complementary, (2) sold to the same class of purchasers, or (3) are similar in use or function.  *Sleekcraft*, 599 F.2d at 350 ("Complementary products, or services, are particularly vulnerable to confusion.") (citations omitted).  As already discussed, the parties clearly offer services that are targeted to the same audience.

Accordingly, the Court concludes that this factor—relatedness of the services covered by the marks—weighs in favor of Plaintiff.

c.    *Strength of the UNITED ARTISTS Marks*

The strength of a mark is evaluated along a spectrum of distinctiveness. *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1014–15 (9th Cir. 1979) (*citing Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 (2d Cir. 1976) (Friendly, J)).  The more distinctive a mark, the more protection it will be afforded.  Courts have generally described four categories on the spectrum, in increasing level of protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.  *Id.*

Arbitrary or fanciful marks are marks which have "no intrinsic connection to the product with which the mark is used."  *Brookfield Commc'n*, 174 F.3d at 1058 n. 19. An arbitrary or fanciful mark is "inherently distinctive" and "will be afforded the widest ambit of protection from infringing uses."  *Sleekcraft*, 599 F.2d at 349.  On the other hand, a descriptive mark defines qualities or characteristics of a product in a straightforward way, and "will be protected only when secondary meaning is shown." *Id.*  "In between lies suggestive marks which subtly connote something about the products."  *Id.*  Suggestive marks "convey impressions of goods that require the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019

Title:      United Artists Corporation v. United Artist Studios LLC, et al.

consumer to use imagination or any type of multistage reasoning to understand the mark's significance." *Pom Wonderful*, 775 F.3d at 1126.

Plaintiff argues that its marks are both "conceptually and commercially strong." (PI Mot. at 18).  As to conceptual strength, the UNITED ARTISTS Marks are at least suggestive of the services offered by Plaintiff and was derived from the original premise of "allowing actors to control their own interests instead of being dependent upon commercial entities." (*Id.* (citing Campbell Decl. ¶ 2)).  As to commercial strength, there is little dispute over UNITED ARTISTS Marks' fame since they, among other things, have been used for over a century in numerous "publicly-lauded cinematic masterpieces" and collectively grossed more than $5.3 billion just since 2009.  (PI Reply at 10).

In opposition, Defendants argue that the UNITED ARTISTS Marks are weak and neither conceptionally nor commercially strong.  (PI Opp. at 9).  Defendants also argue that Plaintiff "has not presented any evidence to suggest that the reasonable consumer should associate 'United Artist Film Festival LLC' and 'United Artist Studios LLC' with [United Artists]." (*Id.*).  According to Defendants, "Plaintiff relies on conclusory statements and speculation alone." (*Id.* at 10).

The Court disagrees with Defendants and concludes that the UNITED ARTISTS Marks are strong and, according to spectrum of distinctiveness, are at least suggestive. The term "united artists" is suggestive because it "requires customers to use some additional imagination and perception to decipher the nature of [Plaintiff's] goods [or services]." *Pom Wonderful*, 775 F.3d at 1126.  While the term "united artists" certainly has some connection to movie and television production and distribution, it is not a descriptor in and of itself, and a customer would not immediately know upon hearing the name that it relates to movie and television production and distribution.

Contrary to Defendants' contention that the term "united artists" is generic and the UNITED ARTISTS Marks are weak, the fact that both the words "united" and "artist" are common does not render them weak.  (PI Opp. at 12–13).  McCarthy's analysis on the "common word" fallacy is as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                  Date:  June 3, 2019
Title:       United Artists Corporation v. United Artist Studios LLC, et al.

> Some courts occasionally make loose reference to the fact that plaintiff's
> mark is a "common word" found in the dictionary and is therefore
> "weak."  But this is a nonsequitur.  That a word is in "common usage" is
> quite irrelevant.  The issue is whether that word is in common usage as a
> mark for similar goods or services such that its distinctiveness in the
> customer's mind is blurred.

*See* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:87
(5th ed., updated June 2019).

Accordingly, the Court concludes that this factor—strength of the UNITED
ARTISTS Marks—weighs in favor of Plaintiff.

### d.    *Evidence of actual confusion*

The next *Sleekcraft* factor concerns whether there is actual confusion between
the marks.  As pointed out by Defendants and acknowledged by Plaintiff, there is
currently no evidence of actual confusion between the UNITED ARTISTS Marks and
the UNITED ARTIST Marks.  (*See* PI Opp. at 11–12; PI Reply at 7–8).  At the
hearing, Defendants argued that this factor should carry significant weight in the
analysis since there is no evidence of actual confusion.

At the preliminary injunction stage, however, a showing of actual confusion is of
less importance and the Ninth Circuit has cautioned against resting a finding of
likelihood of success on that basis alone.  *Wells Fargo & Co. v. ABD Ins. & Fin.
Servs., Inc.*, 758 F.3d 1069, 1073 (9th Cir. 2014) (explaining that at the early stage of
litigation where preliminary injunctions are generally sought, parties "rarely have
amassed significant evidence of actual confusion") (citing to *Network Automation, Inc.
v. Advanced Sys. Concepts*, 638 F.3d 1137, 1151 (9th Cir. 2011)).  The Court therefore
follows the Ninth Circuit and, contrary to Defendants' argument at the hearing, does
not place significant emphasis on this factor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                Date:  June 3, 2019

Title:      United Artists Corporation v. United Artist Studios LLC, et al.

_____

Accordingly, in the absence of actual evidence of confusion, this factor neither favors nor disfavors a finding of a likelihood of confusion.

e.      ***Defendants' intent in selecting the UNITED ARTIST Marks***

When an alleged infringer knowingly adopts a mark similar to another's, courts will generally presume an intent to deceive the public.  *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993); *see also Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1962) (explaining that defendant's adoption of the "Black & White" mark used by a well-known whiskey company indicates that the brewing company expected confusion and resulting profit). Generally, however, the intent factor will be of minimal importance because intent can be hard to prove and "evidence of the defendant's intent to confuse customers . . . is not required for a finding of a likelihood of confusion."  *Pom Wonderful*, 775 F.3d at 1131.

Plaintiff argues that this factor weighs in its favor because "the inescapable conclusion is that Defendants adopted the trade names and trademarks to capitalize on their similarity to the UNITED ARTISTS Marks, [Plaintiff's] trade name, and the goodwill associated" with them.  (PI Mot. at 19–20).  Plaintiff reaffirms that Defendants "do not contend that they were unaware of the UNITED ARTISTS Marks at the time the infringing names and marks [*i.e.*, UNITED ARTIST Marks] were chosen."  (PI Reply at 16).  In favor of Defendants, it is true that there is no direct evidence that Defendants knew of Plaintiff's marks.  However, it is simply impossible to conclude that anyone in the entertainment industry does not.

Being indulgent to Defendants, this factor is neutral.

_____

**CIVIL MINUTES—GENERAL**                                        22

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-828-MWF (MAAx)            Date:  June 3, 2019**

Title:      United Artists Corporation v. United Artist Studios LLC, et al.

### f.     *Overall analysis of the* Sleekcraft *factors*

The Court's analysis of the relevant five *Sleekcraft* factors reveals that three factors weigh in favor of Plaintiff: similarity of the marks, relatedness of the services, and strength of Plaintiff's marks.  Two factors are neutral:  actual confusion and intent.

As previously discussed, "[s]heer numerosity of *Sleekcraft* factors . . . is not by itself dispositive of the ultimate likelihood-of-confusion determination."  *Pom Wonderful*, 775 F.3d at 1132 (citations omitted).  The Court must instead consider the factors taken together, and in context.  *See id.*; *Entrepreneur Media*, 279 F.3d at 1140 (while the *Sleekcraft* analysis guides the Court, "the totality of facts in a given case that is dispositive").

In considering the totality of the circumstances, the Court determines that Plaintiff is likely to succeed on the merits, as consumers are likely to be confused between the UNITED ARTISTS Marks and the UNITED ARTIST Marks.  Defendants' marks not only bear a visual, aural, and semantic similarity to Plaintiff's marks, they are also related services targeted to the same general class of consumers.

Accordingly, the first factor—likelihood of success on the merits—weighs in favor of granting a preliminary injunction.

### 2.     Irreparable Harm

A plaintiff seeking a preliminary injunction must establish that it "is likely to suffer irreparable harm in the absence of preliminary relief."  *Winter*, 555 U.S. at 20.  Indeed, suffering irreparable harm prior to a determination of the merits is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction."  11A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2016).  Further, the harm identified may not be speculative and Plaintiffs must also show more than the possibility of some remote further injury.  *Winter*, 555 U.S. at 21-22 (rejecting "possibility" standard and holding that plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-828-MWF (MAAx)**              **Date:  June 3, 2019**
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

Plaintiff argues that it is likely to suffer irreparable harm for which there is no adequate remedy at law because Plaintiff, among other reasons, (1) "stands to lose significant credibility as it is likely that consumers or other entertainment professionals will be confused that Mr. Schramm or his businesses are associated with or approved by [Plaintiff]"; and (2) will lose "control over its business reputation and damages to the goodwill" it has developed for over a century.  (PI Mot. at 20–22).

Although irreparable injury can no longer be presumed in trademark cases, the Court nevertheless finds that Plaintiff has submitted sufficient evidence to support a finding that irreparable injury is likely if an injunction is not granted.  Courts have recognized that, in trademark cases, the injury caused by the infringement manifests as the loss of control over a business' reputation, a loss of trade, and a loss of goodwill. *See, e.g.*, *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009) (noting that "[t]rademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners" and that a "trademark owner's loss of the ability to control its mark . . . creates the potential for damage to its reputation").

Here, Plaintiff has provided evidence, through Mr. Campbell's declaration, that it has invested millions of dollars over a century in developing and promoting the UNITED ARTISTS Marks.  As a result, Plaintiff has distributed "many of cinema's greatest masterpieces and commercial successes," including numerous best pictures and, more recently, movies that have collectively grossed more than $5 billion.  (*See* Campbell Decl. ¶¶ 3–8).  While Plaintiff has not produced specific evidence that association with Defendant's UNITED ARTIST Marks has been harmful to its reputation, it is enough at this early stage of litigation that Plaintiff has introduced evidence of loss of control over its own business reputation and quality control.

Accordingly, the Court concludes this factor also weighs in favor of granting a preliminary injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019
Title:       United Artists Corporation v. United Artist Studios LLC, et al.

### 3.    Balance of Hardships and Public Interest

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987); *see also Int'l Jensen v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) ("In evaluating the balance of hardships a court must consider the impact granting or denying a motion for preliminary injunction will have on the respective enterprises."). An injunction may not issue unless the balance of the hardships tips in favor of the moving party. "[A] court must remain free to deny a preliminary injunction, whatever be the showing of likelihood of success, when equity in the light of all the factors so requires." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 877 F. Supp. 2d 838, 916 (N.D. Cal. 2012).

Moreover, courts "must consider the public interest as a factor in balancing the hardships when the public interest may be affected." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "In the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused." *CytoSport*, 617 F. Supp. 2d at 1081.

The Court determines that both the public interest and the balance of the hardships tip slightly in Plaintiff's favor. Defendants argue that if a preliminary injunction is granted, then they "will have to shut down its businesses, incur millions of dollars in losses and face the destruction of the business itself." (PI Opp. at 13). But Defendants have cited to no evidence for support, not even a supporting declaration. In contrast, Plaintiff has presented evidence that its reputation and goodwill will be harmed without a preliminary injunction. *See supra*. Moreover, as the Court has explained above, there is a likelihood of confusion between the UNITED ARTISTS Marks and the UNITED ARTIST Marks, which establishes that the injunction is in the public interest.

Accordingly, the Court concludes that the balance of hardships and public interest factors weigh in favor of granting a preliminary injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)          Date:  June 3, 2019

Title:      United Artists Corporation v. United Artist Studios LLC, et al.

### 4.    Overall Analysis and Bond

In sum, the Court concludes that all four factors—likelihood of success on the merits, irreparable harm, balance of hardships, and public interest—support granting a preliminary injunction.  Federal Rule of Civil Procedure 65 provides that the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ."  Fed. R. Civ. P. 65(c).  Plaintiff requests that if the Court requires a bond at all, it should be nominal and "in the amount of $5,000."  (PI Mot. at 23).

Accordingly, the PI Motion is **GRANTED**.  The Court **ORDERS** Plaintiff to post a $5,000 bond as security for the issuance of the preliminary injunction.

## III.   DEFENDANTS' MOTION

### A.    Legal Standard

In ruling on Defendants' Motion under Rule 12(b)(6), the Court follows *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,'

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019

Title:      United Artists Corporation v. United Artist Studios LLC, et al.

plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Props.*, 751 F.3d at 996-97; *see also Somers*, 729 F.3d at 960.

## B.  Discussion

As an initial matter, Plaintiff argues that Defendants' Motion should be denied in its entirety for failure to comply with Local Rule 7-3.  (Defendants' Opp. at 6–7).  Plaintiff explains that Defendants "did not even notify [Plaintiff] of their intention to file the [Studios] Motion until the day it was filed."  (*Id.* at 7).  In response, Defendants indicate that they "miscalendared the responsive pleading due date (along with the deadline to meet and confer)."  (Defendants' Reply at 2 (citing Declaration of Eric Sapir ("Sapir Decl.") ¶ 2 (Docket No. 35-1)).

Although it appears that the parties failed to meet and confer in strict compliance with Local Rule 7-3, it does not appear that Plaintiff has suffered prejudice as a result of this failure.  The Court, therefore, will proceed to the merits of Defendants' Motion.  *See, e.g.*, *Reed v. Sandstone Props., L.P.*, No. 12-CV-5021-MMM (VBKx), 2013 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

1344912, at *6 (C.D. Cal. Apr. 2, 2013) ("Because Reed suffered no real prejudice as a result of the late conference, however, the court elects to consider the motion on the merits."). Defendants' counsel, however, is warned to scrupulously comply with all Local Rules in the future.

Turning to the merits of Defendants' Motion, Defendants argue that (1) Plaintiff's FAC fails to state facts with respect to Defendants XLI, XLI41, and Mr. Schramm; (2) the fair use defense defeats all of Plaintiff's claims; and (3) Plaintiff has failed to state any claim for relief. (Defendants' Mot. at 4–15).

### 1.      Defendants XLI, XLI41, and Mr. Schramm

Defendants first argue that "[a]lthough the first seven cause [sic] of actions appear to be pled against all Defendants, said cause [sic] of actions do not make any reference to [XLI, XLI41, or Mr. Schramm." (*Id.* at 4). Defendants XLI, XLI41, and Mr. Schramm "are left to guess as to what is alleged with respect to them and what type of alleged conduct they are alleged to be liable for under the first seven cause [sic] of actions." (*Id.*).

The Court disagrees with Defendants. As Plaintiff points out, the FAC clearly alleges that UA Studios, UA Film Festival, XLI, and XLI41 are "related organizations that share officers," including Mr. Schramm, and that they operate as "agents for [and/or] affiliates of each other." (Defendants' Opp. at 8 (citing FAC ¶¶ 10, 27)). Moreover, Mr. Schramm is alleged to have filed applications for the UNITED ARTIST Marks and indicates on those applications that he is the owner of the marks and "dba [doing business as] XLI Technologies, Inc." (FAC ¶¶ 17, 19. 24). In addition, the websites listed on the applications are www.unitedartiststudios.com and www.unitedartistfilmfestival.com, the latter indicating that *XLI41* provides "Production support and Theatrical Distribution" for UA Film Festival. (*Id.*). Finally, the email addresses provided in the applications use the "@xli*41*.com" domain. (*Id.*).

The Court has little difficulty concluding that (1) the FAC sufficiently alleges that UA Studios, UA Film Festival, XLI, and XLI41 are entities that act as agents for

---

**CIVIL MINUTES—GENERAL**                                                           28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-828-MWF (MAAx)**               **Date:  June 3, 2019**
Title:        United Artists Corporation v. United Artist Studios LLC, et al.

and are affiliates of one another; (2) all four entitles are controlled (at least in part) by
Mr. Schramm; and (3) all Defendants have acted in a manner that may have infringed
on the UNITED ARTISTS Marks.

Accordingly, Defendants' Motion is **DENIED** to the extent it seeks dismissal
because Plaintiff's FAC fails to state facts with respect to Defendants XLI, XLI41, and
Mr. Schramm.

### 2.    Fair Use

Defendants next argue that the fair use defense defeats all of Plaintiff's claims.
(Defendants' Mot. at 4–8).

There are two fair use defenses available in trademark infringement actions,
classic and nominative.  *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792,
809 (9th Cir. 2003) (stating that both types of fair use defense are applicable in both
trademark actions).

The classic fair use defense applies where the defendant "has used the plaintiff's
mark only to describe his own product, and not at all to describe the plaintiff's
product."  *Id.* (quoting *Cairns v. Franklin Mint*, 292 F.3d 1139, 1151 (9th Cir. 2002)
(emphasis omitted)).  The classic fair use defense "applies only to marks that possess
both a primary meaning and a secondary meaning—and only when the mark is used in
its primary descriptive sense rather than its secondary trademark sense."  *Brother
Records, Inc. v. Jardine*, 318 F.3d 900, 905 (9th Cir. 2003) (footnote omitted), *cert.
denied sub nom.*, *Jardine v. Brother Records, Inc.*, 540 U.S. 824 (2003); *see also
Cairns*, 292 F.3d at 1150 (concluding that under the classic fair use defense, "[a] junior
user [of a trademark] is always entitled to use a descriptive term in good faith in its
primary, descriptive sense other than as a trademark") (quoting 2 J. Thomas McCarthy,
McCarthy on Trademark and Unfair Competition § 11:45 (4th ed. 2001)).

Here, the Court agrees with Plaintiff that Defendants have offered no
explanation as to **how** the UNITED ARTISTS Marks are used to describe the UNITED

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-828-MWF (MAAx)              Date:  June 3, 2019**
Title:        United Artists Corporation v. United Artist Studios LLC, et al.

ARTIST Marks.  (*See* Defendants' Opp. at 12).  Nor do Defendants adequately explain any primary or secondary meaning as to either mark.  Indeed, Defendants' "analysis" of classic fair use appears to be a patchwork of entire paragraphs from the Lanham Act and various opinions with minimal substantive discussion of either the UNITED ARTISTS Marks or the UNITED ARTIST Marks.

The nominative fair use defense applies where the defendant has "used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product."  *Mattel*, 353 F.3d at 809 (quoting *Cairns*, 292 F.3d at 1151 (internal quotation marks and emphasis omitted)).  In other words, "[t]he goal of a nominative use is generally for the 'purposes of comparison, criticism [or] point of reference.'"  *Id.* (quoting *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992)).  Here, the Court again has little difficulty concluding that Defendants' UNITED ARTIST Marks were not used for purposes of comparison, criticism, or point of reference to the UNITED ARTISTS Marks.  Therefore, the nominative fair use defense is inapplicable.

Accordingly, Defendants' Motion is **DENIED** to the extent it seeks dismissal based on the classic or nominative fair use defense.

### 3.      Failure to State a Claim

Defendants finally argue that all of Plaintiff's claims should be dismissed for failure to state sufficient facts.  (Defendants' Mot. at 9–15).  Defendants raise several arguments, all of which the Court finds unavailing:

***First***, Defendants argue that "Plaintiff's trademark infringement, cyberpiracy and unfair competition claims (Counts 1 [to] 8) mirror each other, and for these claims, Plaintiff "needed to allege plausible facts to support that Defendants' use of [the UNITED ARTIST Marks], www.unitedartiststudios.com and www.unitedartistfilmfestival.com is likely to confuse consumers."  (*Id.* at 9).  Defendants then argue that since "Plaintiff has not alleged facts to show confusion is probable, these claims should be dismissed."  (*Id.*).  Defendants finally argue that a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

"detailed analysis of the *Sleekcraft* factors is not necessary here, as it is readily apparent from Plaintiff's allegations that they [sic] have failed to plead any facts to demonstrate . . . that a 'reasonably prudent consumer' was likely to be confused."  (*Id.* at 11 (citation omitted)).

The Court disagrees for the reasons discussed in connection with the PI Motion, namely, that the balance of the *Sleekcraft* factors suggests that consumers are likely to be confused.  *See supra*.

***Second***, as to the claim for trademark dilution, Defendants argue that it should be dismissed because Plaintiff fails to offer factual allegations that the UNITED ARTISTS Marks are famous.  (Defendants' Mot. at 12–13).

"A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark."  *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008)).

Here, the Court disagrees and concludes that there are ample allegations to plausibly show that the UNITED ARTISTS Marks are famous.  As already discussed, Plaintiff has distributed many of cinema's greatest masterpieces and commercial successes, including numerous best pictures and, more recently, movies that have collectively grossed more than $5 billion.  In addition, Plaintiff has invested millions of dollars over a century in developing and promoting the UNITED ARTISTS Marks to be an instantly recognizable name in the entertainment industry.

***Third***, as to the claim for cyberpiracy, Defendants argue that it should be dismissed because Plaintiff fails allege that they "registered or used a domain that is confusingly similar to Plaintiff's asserted marks and did so with a bad faith intent to profit from that mark."  (Defendants' Mot. at 13–14 (internal quotation marks omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                Date:  June 3, 2019
Title:      United Artists Corporation v. United Artist Studios LLC, et al.

To state a claim a cyberpiracy, a plaintiff must allege that "defendant (1) registered, trafficked in, or used a domain name, (2) that is confusingly similar to the plaintiff's trademark, and (3) had a bad faith intent to profit from that domain name."  *eAdGear, Inc. v. Liu*, No. 11-CV-5398-JCS, 2012 WL 2367805, at *12 (N.D. Cal. June 21, 2012) (citing 15 U.S.C. § 1125(d)(1)(A)).

Here, the Court is not persuaded by Defendants' argument.  Plaintiff specifically alleges that Defendants acted in bad faith by using two domains to profit from the goodwill associated with the UNITED ARTISTS Marks.  For instance, Plaintiff alleges that Defendants "used and are using the [UNITED ARTIST Marks] with a bad faith intent to profit from the UNITED ARTISTS Marks" and "registered, are trafficking in, and are using the domain names www.unitedartiststudios.com and www.unitedartistfilmfestival.com, both of which are confusingly similar to the UNITED ARTISTS Marks."  (*See* FAC ¶¶ 53–54).

Accordingly, Defendants' Motion is **DENIED** to the extent it seeks dismissal based on failure to state sufficient facts.

## IV.   **PLAINTIFF'S MOTION**

Plaintiff argues that Defendants' counterclaims one (invalidation of the UNITED ARTISTS Marks), six (intentional interference with contractual relations), seven (violation of the UCL), eight (intentional infliction of emotional distress, and nine (negligent infliction of emotional distress) should be dismissed for failure to state a claim.  (Plaintiff's Mot. at 4–21).

Defendants' lack of opposition is grounds for granting Plaintiff's Motion.  *See* L.R. 7-12; *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff who failed to address issues raised in a defendant's motion to dismiss in his opposition brief "has effectively abandoned his claim, and cannot raise it on appeal"); *Silva v. U.S. Bancorp*, No. 10-EDCV-01854-JHN-PJWx, 2011 WL 7096576, at *4 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his … claim should be dismissed because he failed to address Defendants' arguments in his

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-828-MWF (MAAx)                Date:  June 3, 2019
Title:        United Artists Corporation v. United Artist Studios LLC, et al.

Opposition."); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.") (citing *Locricchio v. Office of U.S. Trustee*, 313 Fed. Appx. 51, 52 (9th Cir. 2009)).

Accordingly, Plaintiff's Motion is **GRANTED** *with leave to amend* as to Defendants' first and sixth through ninth counterclaims.

## V.    **CONCLUSION**

The PI Motion is **GRANTED**.  A separate Preliminary Injunction Order will issue.  The Court **ORDERS** Plaintiff to post a $5,000 bond as security for the issuance of the preliminary injunction.

Defendants' Motion is **DENIED** in its entirety.  Defendants shall answer the FAC on or before **June 17, 2019**.

Plaintiff's Motion is **GRANTED** *with leave to amend*.  Defendants may file a Second Amended Counterclaim, if any, on or before **June 17, 2019**.  Plaintiff shall file a response to the Second Amended Counterclaim, if any, on or before **July 1, 2019**. While there may be a Second Amended Counterclaim, there will be no Third.  Any future successful motion to dismiss will be granted without leave to amend.

IT IS SO ORDERED.