SHEPPARD MULLIN RICHTER & HAMPTON LLP
JILL M. PIETRINI (Cal. Bar No. 138335)
  jpietrini@sheppardmullin.com
PAUL A. BOST (Cal. Bar No. 261531)
  pbost@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:  (310) 228-3700
Facsimile:   (310) 228-3701

*Attorneys for Plaintiff and Counter-Defendant*
UNITED ARTISTS CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED ARTISTS CORPORATION, a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED ARTIST STUDIOS LLC, a Nevada limited liability company; UNITED ARTIST FILM FESTIVAL LLC, a Nevada limited liability company; XLI TECHNOLOGIES INC., a revoked Nevada corporation; XLI41 L.L.C., a Nevada limited liability company; JAMES P. SCHRAMM, an individual; and DOES 1-10, inclusive,<br><br>        Defendants.<br><br>AND COUNTERCLAIMS. | Case No.  2:19-cv-00828-MWF-MAAx<br><br>**PLAINTIFF AND COUNTER-DEFENDANT UNITED ARTISTS CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANT SCHRAMM**<br><br>Date:        TBD<br>Time:        10:00 a.m.<br>Courtroom:  350 W. 1st Street, 5A<br>Judge:       Hon. Michael W. Fitzgerald<br><br>Complaint Filed:    Feb. 5, 2019<br>FAC Filed:          March 26, 2019 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................... 1

II.     STATEMENT OF RELEVANT FACTS ............................................... 2

  A.      Mr. Schramm Assaults Mr. Flores ............................................ 2

  B.      Mr. Schramm's Repeated Harassing Phone Calls and Emails to Mr. Flores .................................................................................. 3

  C.      The Effects of Mr. Schramm's Harassment ............................... 6

  D.      Mr. Schramm's History of Abusive Conduct in This Case ................... 7

III.    LEGAL STANDARD ............................................................................ 7

IV.     THE COURT SHOULD ENJOIN MR. SCHRAMM'S THREATENING AND HARASSING CONDUCT AND ORDER HIM TO IDENTIFY AND REMOVE ALL OF HIS HARASSING INTERNET POSTS AND BILLBOARDS ......................................... 8

  A.      The Court May Enjoin Mr. Schramm's Conduct Pursuant to its Inherent Authority to Control the Conduct of its Litigants .................. 8

  B.      Mr. Schramm Does Not Have the Right to Intimidate United Artists or Its Counsel ................................................................... 9

V.      PRELIMINARY INJUNCTIVE RELIEF IS WARRANTED ....................... 11

  A.      United Artists is Likely to Succeed on the Merits ................................ 12

  B.      United Artists is Likely to Suffer Irreparable Harm in the Absence of a Preliminary Injunction ..................................................... 16

  C.      The Balance of the Equities Weighs in United Artists' Favor ............. 17

  D.      An Injunction is in the Public Interest ................................................ 17

  E.      Any Bond Requirement Should Be Minimal ....................................... 18

VI.     CONCLUSION ..................................................................................... 18

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Alexander v. United States*
  509 U.S. 544 (1993) .................................................................. 10

*Armstrong v. Parker*
  No. F065640, 2013 WL 6795409 (Cal. Ct. App. Dec. 23, 2013) ........................ 15

*Caribbean Marine Servs. Co., Inc. v. Baldrige*
  844 F.2d 668 (9th Cir. 1988) ......................................................... 16

*Chambers v. NASCO, Inc.*
  501 U.S. 32 (1991) .................................................................... 8

*De Long v. Hennessey*
  912 F.2d 1144 (9th Cir. 1990) ......................................................... 8

*Ensworth v. Mullvain*
  224 Cal.App.3d 1105 (1990) ........................................................... 15

*Glaser v. Meserve*
  No. B240385, 2013 WL 1460339 (Cal. Ct. App. Apr. 11, 2013) .......................... 15

*Idaho v. Coeur d'Alene Tribe*
  49 F. Supp.3d 751 (D. Idaho 2014), *aff'd*, 794 F.3d 1039 (9th Cir. 2015) .................................................................... 17

*Johnson v. Couturier*
  572 F.3d 1067 (9th Cir. 2009) ......................................................... 18

*Lewis v. S.S. Baune*
  534 F.2d 1115 (5th Cir. 1976) .......................................................... 8

*Myart v. Taylor*
  No. SA: 5:16-CV-736-DAE, 2016 WL 5376227 (W.D. Tex. Sept. 26, 2016) .......................................................... 9, 11, 17, 18

*Nicholas v. Mitchell*
  No. A132763, 2012 WL 6054090 (Cal. Ct. App. Dec. 5, 2012) ......................... 13

*Principe v. Curry*
  No. 8:17-CV-00608-JLS-KESX, 2018 WL 1406912 (C.D. Cal. Jan. 3, 2018) ................................................................................ 12, 14

*Quick v. Bond*
  No. A097954, 2002 WL 31689723 (Cal. Ct. App., Dec. 2, 2002) .................... 14

*Stormans, Inc. v. Selecky*
  586 F.3d 1109 (9th Cir. 2009) .................................................................. 8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*
  240 F.3d 832 (9th Cir. 2001) ..................................................................... 8

*Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*
  799 F.3d 437 (5th Cir. 2015) ................................................................... 10

*Test Masters Educ. Servs., Inc. v. Singh*
  428 F.3d 559 (5th Cir. 2005) ................................................................. 9, 10

*Volis v. City of Los Angeles Hous. Auth.*
  No. CV-13-01397-MMM-SPX, 2013 WL 12205684 (C.D. Cal. July 22, 2013) ............................................................................................. 12

*Winter v. Natural Res. Def. Council, Inc.*
  555 U.S. 7 (2008) ................................................................................. 16

*Yates v. Belli Deli*
  No. C 07-01405 WHA, 2007 WL 2318923 (N.D. Cal. Aug. 13, 2007) ..................................................................................................... 9

Statutes

Cal. Civ. Proc. Code § 527.6 ........................................................... 12, 15, 17

Cal. Civ. Proc. Code § 527.6(a)(1) and (d) .............................................. 12

Cal. Civ. Proc. Code § 527.6(b)(2) ........................................................ 12

Cal. Civ. Proc. Code § 527.6(b)(3) ........................................................ 12

Cal. Civ. Proc. Code § 527.6(b)(7) ........................................................ 12

Other Authorities

First Amendment ....................................................................... 6, 9, 10

Fed.R.Civ.P. 65 .................................................................................................. 12, 18

Fed.R.Civ.P. 65(b)(1)(A) .................................................................................. 8

https://www.biasloser.com/current-bias-losers .......................................... 4

# I.   __INTRODUCTION__

Throughout this lawsuit and even before it was filed, defendant James P. Schramm has engaged in abusive and threatening behavior toward counsel for Plaintiff United Artists Corporation ("United Artists") and its representatives.  Mr. Schramm has most recently escalated his conduct to include alarmingly direct threats and specific *personal attacks* toward Daniel Flores, in-house counsel (Executive Vice President, Litigation) for Metro-Goldwyn-Mayer Studios Inc. ("MGM"), the parent company of United Artists.  On September 19, 2019, Mr. Schramm verbally and physically assaulted Mr. Flores, United Artists' client representative, in the lobby of the Edward R. Roybal United States Courthouse following a hearing for which the Honorable Maria A. Audero summoned Mr. Schramm to testify after Defendants failed to produce documents and respond to discovery (for which the Court sanctioned Mr. Schramm *personally* in the amount of $5,000).  During the two weeks following that incident, Mr. Schramm has engaged in a multifaceted campaign of harassment and intimidation of Mr. Flores, which is plainly aimed at bullying United Artists into ending this lawsuit and which threatens to compromise the integrity of the legal process, including tainting the potential jury pool.  Ironically, Mr. Schramm recently created a website purporting to expose "bullies," but in reality it functions as Mr. Schramm's personal bully pulpit to attack Mr. Flores publicly by threatening to erect thirty harassing and defamatory billboards in several major cities.

Because Mr. Schramm has repeatedly stated his intent to continue and *expand* this vexatious campaign of harassment unabated in the absence of judicial intervention, United Artists has no alternative but to seek a temporary restraining order and preliminary injunction enjoining Mr. Schramm from continuing his threatening and harassing conduct directed at Mr. Flores and United Artists' other counsel and employees.

\\\

\\\

## II.      STATEMENT OF RELEVANT FACTS

### A.      Mr. Schramm Assaults Mr. Flores

On September 19, 2019, following the hearing in this case before Magistrate Judge Audero where Mr. Schramm was ordered to appear and testify about his purported document collection, Mr. Schramm directed a verbal tirade at Mr. Flores, which continued into the courthouse lobby, and resulted in Mr. Schramm physically assaulting Mr. Flores.  Declaration of Daniel Flores ("Flores Decl."), ¶ 2-8.

Mr. Schramm's harassing conduct began when Mr. Flores and his colleague were in an elevator with Mr. Schramm and his counsel, Eric Sapir, after they exited the courtroom.  Immediately after the elevator doors closed, Mr. Schramm said, quite loudly, "This is such bullshit!" and "this is a complete waste of time."  He continued, speaking directly to Mr. Flores, "You guys are making this personal.  Paul [Bost, United Artists' outside counsel,] is making this personal.  Jill [Pietrini, United Artist's lead outside counsel,] is making this personal."  When Mr. Flores responded, "Jim, this isn't personal.  If anybody made this personal, it was you," Mr. Schramm repeated, "This is such bullshit, this is a complete waste of time."  Mr. Flores then said, "I agree completely, we could settle this right now if you're willing to take a judgment and pay us our attorney's fees that we've incurred in prosecuting this case."  As the parties left the elevator and walked toward the lobby, Mr. Schramm responded, "Pay you?  Why would I pay you?," and Mr. Flores responded, "For infringing our trademarks."  *Id.* ¶ 5.

Then Mr. Schramm, who was walking in front of Mr. Flores, stopped abruptly, turned around, leaned forward intimidatingly, and shouted very loudly and menacingly in Mr. Flores's face, "WHAT FUCKING TRADEMARKS?  HOW THE FUCK DID I INFRINGE YOUR FUCKING TRADEMARKS, YOU MOTHERFUCKER?" When Mr. Flores took his phone out of his pocket and asked Mr. Schramm to repeat what he had just said, Mr. Schramm grabbed Mr. Flores's wrist and wrested his phone out of his hand.  *Id.* ¶ 6.

**B.**   **Mr. Schramm's Repeated Harassing Phone Calls and Emails to Mr. Flores**

The following day, Friday, September 20, 2019, Mr. Flores's assistant reported that she had been receiving phone calls from an anonymous caller asking to speak with him.  Over the weekend, Mr. Flores received two notifications that Mr. Schramm had viewed his professional profile on LinkedIn.  *Id.* ¶ 8.

Then, on Monday, September 23, 2019, Mr. Flores's assistant told him that someone named Nick Coleman was on the phone for him.  When Mr. Flores answered the phone, there was silence.  Mr. Flores then asked, "Who is this?" and the voice on the other end said, "You know who this is."  Mr. Flores again asked the caller again to identify himself.  The caller then said "you're fucking with me…you're threating me…you're harassing me…," and after some dialogue, it became clear that the caller was Mr. Schramm.  Throughout the conversation, Mr. Schramm repeated several times that Mr. Flores was harrassing him, "fucking with him," and threatening him, stating "You made things personal" and that Mr. Flores "acted personally."  Mr. Schramm then warned that "soon enough" Mr. Flores would understood what he meant.  He also proposed several times to meet in person to "clear things up."  Mr. Schramm ended the call by saying "you've been warned" and abruptly hung up.  *Id.*

On Wednesday, September 25, 2019, Mr. Flores received an email from Mr. Schramm with the subject line, "My issue with you."  The email reads as follows:

> PLEASE NOTE:  THIS IS DIFFERENT, SEPARATE AND NOT RELATED TO THE LAWSUIT YOU HAVE AGAINST ME AND MY COMPANIES.
>
> Dan,
>
> Just wanted to give you a heads up on how serious I am taking your harrassment, threats and attack on me in the lobby of the federal courthouse building.
>
> Go ahead and check out this link: https://www.biasloser.com/current-bias-losers
>
> I will not allow anyone to deliberately violate me and my rights as I believed you did.

1        This is just the beginning.

2        Jim

3   Flores Decl. ¶ 9, Ex. A.

4        Later that same day, Mr. Flores received *another* email from Mr. Schramm.

5   The email reads as follows:

6        PLEASE NOTE: THIS IS DIFFERENT, SEPARATE AND NOT RELATED TO THE LAWSUIT YOU HAVE
7        AGAINST ME AND MY COMPANIES.

8        Look at the "PLEASE NOTE"  This means that you can communicate with me directly.

9        Dan,

10       Again, This is personal Dan.

11       This is between you (as an individual) and me (as an
12       individual).

13       Sending this to Paul and Jill is a waste of time because this is
         a seperate {sic} situation as I was very clear in my past email.

14       I have decided to move the billboard launch date in LA to
15       Oct 1, 2019 (will have to start with a digital billboards now)
         and extending the outdoor PSA for an additional 6 months
16       and will add bench ads and big bus ads.

17       https://www.biasloser.com/current-bias-losers

18       Jim

19   Flores Decl. ¶ 11, Ex. C.

20       When Mr. Flores clicked on the URL in Mr. Schramm's September 25, 2019

21   emails, he discovered that Mr. Schramm had created a website devoted to harassing

22   and – notwithstanding Mr. Schramm's use of the term "opinion" – defaming Mr.

23   Flores. *Id.* ¶ 10, Ex. B.  The webpage contains digitally altered images showing Mr.

24   Flores's face on billboards with the following text: "BIASLOSER.COM.  'It is in my

25   opinion that Daniel M. Flores who is a Beverly Hills Attorney and studio exec. has

26   THREATENED and HARASSED ME in hopes to TAKE MY COMPANY.'  JPS."

27   Mr. Schramm's emails and webpage indicate that he intends to commence a television

28

1    advertising campaign and erect billboards with Mr. Flores's name and face on them

2    starting on October 1, 2019.

3        On September 26, 2019, Mr. Schramm posted a lengthy and public rant on

4    Facebook about Mr. Flores.  The post encouraged viewers to visit his webpage about

5    Mr. Flores and included a photo of a digitally altered billboard with Mr. Flores's name

6    and photograph, which Mr. Schramm described as "a screenshot of the digital key art

7    mockup to show what the billboards will look like when they get installed the week

8    of Oct. 1, 2019.  These ads and billboards will go up in LA, Utah, New York and

9    Vegas and continue for a year."  Bost Decl. ¶ F, Ex. F.

10       On October 2, 2019 at 1:47 p.m., Mr. Schramm sent yet *another* email to Mr.

11   Flores stating the following:

12           Dan,

13           The first billboard (BiasLoser.com) went up yesterday.

14           There will be a lot more

15           Have a good day.

16           You want to find out where, call me and I will tell you.

17           I'm sure you will know when they go up in Beverly Hills,
             Century City, West Hollywood and Burbank.
18
19   Flores Decl. ¶ 12, Ex. D.

20       The same day on October 2, 2019, less than two hours later at 3:37 p.m., Mr.

21   Schramm sent *another* email to Mr. Flores, ***identifying Mr. Flores' children by name***,

22   and stating the following:

23           I told you that this was separate to the case. I told you that
             this is a personal issue between you and me and now you
             try to attach and relate it to something it is not attached
24           to?  You actually lied on a court document and committed
             perjury to a federal judge.  I feel that you are a disgusting
25           dumbass.

26           Thank God there is video/audio surveillance of your wild
             behavior which will prove that you lied to a federal
27           judge.  You fabricated a different event than what actually
             happened.
28

Can you really be that stupid?

There is video surveillance from 3 separate angles in that lobby that show the facts.

I feel that you are not just a lying bully, but the most disgusting form of human garbage that I have ever had to deal with in my life.

I'm sure [names redacted] are so proud of their Dad being such a bully and liar in order to hurt other people. Something to look up to. Good Job Dad! I hope your proud of yourself.

All I can do is express my feeling and rights utilizing the first amendment to expose the scum that I feel you are and have been to me.

I actually was contacted by a woman that worked at MGM that is deciding to come forward after seeing the billboard this morning and the facebook page. It sounds to me from her description that you sexually harassed her. She will be sending me an email with all the details on exactly what happened and what you did to her. She said she has a witness that you actually work with. It sounds to me that she wants to expose you to Daniel. You're a popular guy. It doesn't surprise me, because I feel that if you are a bully and scumbag to one person, there is always others that you do the same thing to.

I'm a Dad to {sic} and I could not imagine ever being a bad example to my kids. I could never do that ever. How can you do that? My kids will see that if your {sic} bullied, that you can stick up for yourself. I am showing them that you do not have to put up with anyone who bullies you. That nobody has the right to take your freedom of happiness away for no reason. This is one of those examples. The power of media is very powerful, more powerful than you and your position Daniel.

Expressing my rights and feelings about what you did to me to the public will not stop.

Flores Decl. ¶ 13, Ex. E.

### C.   The Effects of Mr. Schramm's Harassment

Mr. Schramm's threatening and harassing conduct directed at Mr. Flores has understandably caused Mr. Flores to become concerned about his personal safety and the safety of his children, as well his professional reputation. Mr. Schramm's conduct

is exacerbated by his imposing physical size and volatile temper, which he displayed when he attempted to intimidate Mr. Flores in the courthouse.  Bost Decl. ¶ 6.

### D.    Mr. Schramm's History of Abusive Conduct in This Case

Mr. Schramm has acted abusively and threateningly since the advent of United Artists' dispute with Defendants.  Mr. Schramm's responses to United Artists' cease and desist letters were strewn with profanity, invective, and baseless accusations against United Artists and its outside counsel.  Dkt. 2, ¶¶ 19-23, Exs. C-G.  Mr. Schramm also left a threatening voicemail with the chairperson of Sheppard Mullin Richter & Hampton, LLP, United Artists' outside counsel's law firm.  *Id.*, ¶ 20.

Around mid-July 2019, United Artists' outside counsel (Ms. Pietrini and Mr. Bost) learned that Mr. Schramm had registered domain names bearing their names.  Bost Decl. ¶ 2.  Mr. Schramm has also posted defamatory comments regarding Ms. Pietrini on many public fora.[1] *Id.* ¶ 3.

Also, Mr. Schramm has hurled epithets and made threats of physical violence against Mr. Bost.  After the hearing on September 19, 2019 (discussed above), Mr. Schramm and Mr. Bost, with their respective parties, approached the courthouse elevators.  Mr. Bost excused himself to use the restroom.  As he did so, Mr. Schramm said something to the effect, "What – are you afraid to get in the elevator with us?"  Mr. Schramm then said, "I have to go to the restroom too, but I'm afraid of what I might do to [Mr. Bost] in there."  Flores Decl. ¶ 4.  Later, when the parties were outside of the courthouse, Mr. Schramm yelled "Dickhead!" at Mr. Bost.  Bost Decl. ¶ 4.

## III.    LEGAL STANDARD

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse

---

[1]    Given the defamatory nature of the statements by Mr. Schramm and to prevent further dissemination, United Artists will not identify the URLs on which they were made, but will do so at the hearing on this matter or will submit this information *in camera* upon request by the Court.  Bost Decl. ¶¶ 2-3.

party can be heard in opposition." Fed.R.Civ.P. 65(b)(1)(A). The standards for granting a temporary restraining order and a preliminary injunction are identical. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order). In order to be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## IV. THE COURT SHOULD ENJOIN MR. SCHRAMM'S THREATENING AND HARASSING CONDUCT AND ORDER HIM TO IDENTIFY AND REMOVE ALL OF HIS HARASSING INTERNET POSTS AND BILLBOARDS

### A. The Court May Enjoin Mr. Schramm's Conduct Pursuant to its Inherent Authority to Control the Conduct of its Litigants

This Court may enjoin Mr. Schramm's threatening and harassing conduct pursuant to its inherent powers. Well-established authority holds that federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) (finding that a district court's invocation of its inherent power to assess attorney's fees as a sanction for a party's bad faith conduct was within its discretion). "[W]hereas [the Federal Rules and other laws] reach[] only certain individuals or conduct, the inherent power extends to a full range of litigation abuses" and can "fill in the interstices." *Id.* at 46.

"Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants" in furtherance of the court's "inherent power." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). Courts have long recognized the "inherent power of federal courts to regulate the activities of abusive litigants" through, for example, pre-filing injunctions. *De Long v. Hennessey*, 912

F.2d 1144, 1147 (9th Cir. 1990); *Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007) ("[A] district court has the inherent power to issue an injunction against litigants who harass their opponents.").

In granting a request for a preliminary injunction prohibiting a litigant's threatening and harassing conduct, the court in *Myart v. Taylor* held that it could, under its inherent power, appropriately exercise jurisdiction over the conduct at issue because it was directly related to the instant lawsuit. *Myart v. Taylor*, No. SA: 5:16-CV-736-DAE, 2016 WL 5376227, at *4 (W.D. Tex. Sept. 26, 2016) (noting that "[t]he individuals Mr. Myart has been contacting are the parties he has sued in this Court, and it appears that the subject of this suit and the subject of Mr. Myart's conduct towards the Defendants in this case is the same."). In that case, the harassment at issue "occurred in the form of repetitive telephone calls, threats—either real or perceived—to Defendants' safety, contact with represented parties outside the presence of their attorney, and behavior that has disrupted the daily functioning [of defendants' place of business]." *Id.* As a result, the court entered a preliminary injunction enjoining the plaintiff from: (1) directly contacting the opposing party; (2) threatening or harassing the opposing party; (3) entering the opposing party's place of business; (4) making phone calls to the opposing party's place of business; and (5) personally serving documents on the opposing party for the pendency of the lawsuit. *Id.* at *5.

Mr. Schramm's threatening and harassing conduct against United Artists and its counsel is directly comparable to the plaintiff's conduct in *Myart*. Accordingly, a similar injunction should be entered here.

### B.   Mr. Schramm Does Not Have the Right to Intimidate United Artists or Its Counsel

So long as it is narrowly tailored, an injunction against a litigant's threatening and harassing conduct is not an unconstitutional prior restraint and would not run afoul of the First Amendment. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559,

580 (5th Cir. 2005) (affirming injunction prohibiting threatening and harassing communications). Prior restraints are "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur" and they are presumptively unconstitutional. *Alexander v. United States*, 509 U.S. 544, 550 (1993). However, as the Fifth Circuit has explained:

> Courts have made a distinction between communication and harassment. *See, e.g., Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S.Ct. 684, 93 L.Ed. 834 (1949). The difference is one between free speech and conduct that may be proscribed. *See e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377, 389, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Although restrictions based upon conduct may incidentally restrict speech, the courts have found that such a restriction poses only a minimal burden on speech. *See, e.g., id. . . .* Thus, ***courts do have the power to enjoin harassing communication***.

*Test Masters*, 428 F.3d at 580 (emphasis added). *Test Masters* involved conduct similar to Mr. Schramm's obstreperous conduct at issue here. In that case, a party, Singh, had made repeated telephone calls to the opposing party and the calls included the screaming of obscenities as well as future threats. *Id.* at 579. In addition, as in this case, Singh engaged in a verbal and physical altercation with opposing counsel in the hallway outside the district courtroom. *Id.* In reviewing the district court's injunction, the Fifth Circuit held that it "swept too broadly when it prohibited all communication," but held that there was "enough evidence presented in the record to justify an injunction order prohibiting Singh from threatening or harassing" the opposing party and its counsel and upheld that portion of the injunction. *Id.* at 580.

In a later decision, the Fifth Circuit held that the injunction against harassment in *Test Masters* also applied to harassing internet postings and rejected Singh's challenge on First Amendment grounds. *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 451 (5th Cir. 2015). The court upheld the district court's finding that Singh had violated the injunction by "instruct[ing] employees to post negative comments about [the opposing party] on various websites" and "aid[ing] in the posting of defamatory videos online." *Id.*

In this case, Mr. Schramm's online activities likewise constitute threatening and harassing conduct.  The Court should therefore enter a similar injunction prohibiting Mr. Schramm from threatening and harassing United Artists' employees and counsel.

## V.    PRELIMINARY INJUNCTIVE RELIEF IS WARRANTED

United Artists can establish the traditional standards for obtaining interim relief in this case, even though such an exacting standard may not be applicable in this instance.   In *Myart v. Taylor*, the court questioned whether it was necessary to establish the traditional standards of injunctive relief when considering an injunction against harassment that is ancillary to the merits of the case and held that the movants had demonstrated a sufficient need for the injunction without demonstrating a likelihood of success on the underlying merits.  The court noted that:

> In certain circumstances, "the traditional standards of injunctive relief ... do not apply to the issuance of an injunction ..." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008) (finding that a Court, when issuing a pre-filing injunction sua sponte against a vexatious litigant, need not find that the person's actions are causing irreparable injury, nor need they find that there is no adequate remedy at law). Here, the Moving Defendants do not put at issue their likelihood of success on the merits in this case. Rather, Defendants seek only to enjoin Mr. Myart from engaging in certain conduct in connection with prosecution of the instant lawsuit. Accordingly, the Court finds that the Defendants have submitted sufficient evidence and testimony in support of their Motion. While this does not satisfy the traditional standard requiring the moving party to show a likelihood of success on the merits of their case, the Moving Defendants have demonstrated a need for an injunction in connection with this case.

2016 WL 5376227, at *4.

In this case, United Artists has already demonstrated a likelihood of success on the merits of its trademark infringement claim, and has obtained a preliminary injunction against Defendants, including Mr. Schramm.  Dkt. 41.  United Artists also has sufficient evidence demonstrating the need for injunctive relief and can satisfy the traditional standards required to obtain a preliminary injunction.

/ / /

A.     <u>United Artists is Likely to Succeed on the Merits</u>

In assessing whether to enjoin a litigant's harassing conduct, courts in this District have looked to the substantive rights created by Cal. Civ. Proc. Code § 527.6, which allows a party to seek an order prohibiting certain types of harassment without filing a complaint or asserting a separate cause of action.  Cal. Civ. Proc. Code § 527.6(a)(1) & (d).  These courts have "applie[d] the substance of the state law" along with the procedural rules of Fed.R.Civ.P. 65.  *See, e.g.*, *Volis v. City of Los Angeles Hous. Auth.*, No. CV-13-01397-MMM-SPX, 2013 WL 12205684, at *1 (C.D. Cal. July 22, 2013) (recognizing that § 527.6 "creat[es] substantive rights against certain types of harassment"); *Principe v. Curry*, No. 8:17-CV-00608-JLS-KESX, 2018 WL 1406912, at *2 (C.D. Cal. Jan. 3, 2018) (explaining that a federal litigant need not bring a separate cause of action to seek relief from harassment under § 527.6).

Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."  Cal. Civ. Proc. Code § 527.6(b)(3).   "Unlawful violence" is "any assault or battery, or stalking."  *Id.* at § 527.6(b)(7).  "Credible threat of violence" is "a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety or the safety of his or her immediate family, and that serves no legitimate purpose."  *Id.* at § 527.6(b)(2).  "Course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email."  *Id.* at § 527.6(b)(1).  Additionally, the harassment "must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  *Id.* at § 527.6(b)(3).

Mr. Schramm's conduct clearly constitutes harassment under these standards. As detailed in Mr. Flores's declaration, Mr. Schramm engaged in unlawful violence constituting harassment on September 19, 2019 when he assaulted Mr. Flores following a hearing in this case.  Flores Decl. ¶¶ 2-8.  Mr. Schramm further harassed Mr. Flores with credible threats of violence when he used subterfuge to contact Mr. Flores on September 23, 2019 and stated that he had a "personal" issue with Mr. Flores and that "soon enough" Mr. Flores would understand what he meant; proposed to meet in person to "clear things up"; and ended the call saying, "You've been warned."  *Id.* ¶ 8.  In addition, Mr. Schramm engaged in a harassing course of conduct by repeatedly calling Mr. Flores's office and sending him threatening emails from September 20, 2019 through October 2, 2019.  *Id.* ¶¶ 8-13, Exs. A-E.  Mr. Schramm further threatened to continue his harassing conduct through an advertising campaign against Mr. Flores starting "the week of Oct. 1, 2019," a threat which he claims to have made good on.  *Id.* ¶ 12, Ex. D.  Taken together, there is no doubt that Mr. Schramm's conduct constitutes harassment.  *See, e.g.*, *Nicholas v. Mitchell*, No. A132763, 2012 WL 6054090, at *2 (Cal. Ct. App. Dec. 5, 2012) ("[Even] a single act of violence or a threat of violence may justify issuance of a restraining order when there is a reasonable certainty that wrongful acts will continue or be repeated.").

There is also no credible argument that Mr. Schramm's conduct serves any legitimate purpose.   In fact, Mr. Schramm's language in his unwanted communications to Mr. Flores indicates that the intended purpose of his conduct is to intimidate Mr. Flores into ending the lawsuit.  For instance, following the hearing and before assaulting Mr. Flores, Mr. Schramm repeatedly referred to the lawsuit, stating, "This is such bullshit! This is a complete waste of time." *Id.* ¶ 5.  He then assaulted Mr. Flores by shouting loudly and menacingly in his face, "WHAT FUCKING TRADEMARKS? HOW THE FUCK DID I INFRINGE YOUR FUCKING TRADEMARKS, YOU MOTHERFUCKER?"  *Id.* ¶ 6.  Mr. Schramm's September 26, 2019 Facebook post further falsely complains that Mr. Flores has been trying to

steal Mr. Schramm's companies.  Bost Decl. ¶ 5, Ex. F.  Mr. Schramm's conduct has escalated now to referencing Mr. Flores's children by name.  Flores Decl. ¶ 13, Ex. E.  This evidences Mr. Schramm's cyberstalking of Mr. Flores and is, for all intents and purposes, a thinly veiled threat of harassment and harm by Mr. Schramm against Mr. Flores' children if Mr. Flores pursues this case on behalf of his employer.  Since Mr. Flores had no prior relationship with Mr. Schramm, his conduct can only be motivated by this lawsuit, and it constitutes an attempt to influence the outcome through intimidating and repeatedly harassing United Artists' in-house counsel.

This Court has already determined that United Artists is likely to prevail in its claim of trademark infringement and has issued a preliminary injunction against Defendants.  Dkt. 41.  This case therefore differs from *Principe v. Curry* in which the court found that the communications at issue had the legitimate purpose of informing the public debate over cryptocurrency.  2018 WL 1406912, at *3.  Here, there is no legitimate purpose in Mr. Schramm's personal attacks against United Artists' in-house counsel regarding this dispute.

Further, the harassment at issue is of the type that would cause a reasonable person to suffer substantial emotional distress, and it has in fact caused Mr. Flores to suffer substantial emotional distress.   Aside from Mr. Schramm's ongoing communications causing disruptions at his workplace, Mr. Flores is now worried about his personal safety and that of his children, as well as his professional reputation.  Flores Decl. ¶ 14.  In addition, Mr. Schramm's conduct has affected other MGM employees who now fear that Mr. Schramm will engage in similar threats and harassment towards them if he ascertains their identities.   Numerous courts have confirmed that the bar for demonstrating "substantial emotional distress" is not high.  In *Quick v. Bond*, No. A097954, 2002 WL 31689723, at *6 (Cal. Ct. App., Dec. 2, 2002) the court held that a petitioner's testimony regarding anxiety and worry is sufficient, and that a petitioner need not show physical symptoms of emotional distress or that he or she sought counseling or medication.  A petitioner's direct live

1  testimony concerning emotional distress is not required in cases where there is

2  sufficient circumstantial evidence of substantial emotional distress based on

3  defendant's harassing conduct. *Ensworth v. Mullvain*, 224 Cal.App.3d 1105, 1110–

4  11 (1990). In *Armstrong v. Parker*, No. F065640, 2013 WL 6795409, at *4 (Cal. Ct.

5  App. Dec. 23, 2013), the court concluded that "[h]arassing correspondence through

6  Facebook posts and messages falls within [the] broad statutory definition" of a

7  harassing "course of conduct" under Section 527.6. The court held that "[i]t is

8  reasonable for a person to feel alarmed, annoyed, or harassed by the fact that such

9  comments have been made about them on a public or semi-public website such as

10 Facebook" and that "[t]his type of behavior could easily cause a reasonable person to

11 experience substantial emotional distress." *Id.* Similarly, in *Glaser v. Meserve*, No.

12 B240385, 2013 WL 1460339, at *6 (Cal. Ct. App. Apr. 11, 2013), the court found

13 sufficient evidence of emotional distress where the evidence showed that the

14 defendant confronted the plaintiff in public and posted negative consumer reviews on

15 the internet. Here, Mr. Flores's declaration contains sufficient evidence of similar

16 conduct — public confrontation, negative online content, and now public billboards

17 — that would cause a reasonable person to suffer substantial emotional distress, as

18 well as testimony concerning the anxiety and worry that Mr. Flores actually suffered

19 as a result of Mr. Schramm's conduct.

20    Mr. Schramm shows no signs of stopping his behavior. Indeed, his stated plan

21 is to erect numerous billboards attacking Mr. Flores: 10 billboards in the Los Angeles

22 area (Beverly Hills, Century City, Sunset/West Hollywood, and by LAX); 10

23 billboards in New York (Times Square); 10 billboards in Las Vegas; and 5 in Utah

24 (where Mr. Flores attended college.) Flores Decl. ¶ 10, Ex. B. Mr. Schramm purports

25 to have the wherewithal to execute this campaign as he has represented that he runs a

26 "media and promotions conglomerate." Dkt. 24-3, ¶ 8.

27

28

1   Accordingly, United Artists is likely to succeed in showing that Mr. Schramm

2   has engaged, and will continue to engage, in harassment warranting the issuance of

3   injunctive relief.

4   **B.**   **United Artists is Likely to Suffer Irreparable Harm in the Absence of a Preliminary Injunction**

5

6   A plaintiff seeking a TRO must demonstrate that irreparable injury is "likely"

7   in the absence of preliminary relief.  *Winter*, 555 U.S. at 22.  The threatened harm

8   must be imminent.  *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674

9   (9th Cir. 1988).

10   In this case, irreparable injury is highly likely and imminent.  Mr. Schramm has

11   already made several threats about future conduct, and then made good (or claims that

12   he made good) on those threats.  His harassing communications have threatened

13   further harassment of Mr. Flores, by, for example, stating that "soon enough" Mr.

14   Flores would understand what he means, "You've been warned," and "This is just the

15   beginning."  Flores Decl. ¶¶ 8, 9.  In addition, he has set up a website for the purpose

16   of harassment that contains, and publicly solicits, defamatory content about Mr.

17   Flores (which conduct is not immunized by Mr. Schramm's statement that he is

18   merely stating his "opinion").  *Id.* ¶ 10, Ex. B.  And, in email communications and

19   online posts, he has threatened to institute an advertising campaign against Mr. Flores

20   starting "the week of Oct. 1" and continuing for the next year.  *Id.* ¶¶ 10-11, Exs. A,

21   B.  On October 2, 2019, Mr. Schramm confirmed that his advertising campaign

22   against Mr. Flores had begun.  *Id.* ¶ 12, Ex. D.  All told, this conduct suggests that

23   physical harm to Mr. Flores (or his family) may be imminent, that harm to Mr.

24   Flores's reputation is ongoing, and that further reputational harm is imminent.

25   Mr. Schramm's conduct also threatens imminent and irreparable harm to

26   United Artists because of its potential to dissuade Mr. Flores and other members of

27   MGM's legal team from fully participating in this lawsuit as legal representatives of

28   United Artists.  Mr. Schramm's menacing conduct following the last hearing may also

-16-

1  dissuade members of MGM's legal team from  participating in this case, which could

2  negatively impact its ability to litigate this case and cause irreparable harm to United

3  Artists' interests.  Finally, Mr. Schramm's actions are intended to, and may in fact,

4  taint the potential jury pool in this case, as Mr. Schramm promises to erect billboards

5  in the Los Angeles area.  *Id.* ¶ 12, Ex. D.

6      A court order enjoining Mr. Schramm from engaging in further harassing and

7  threatening conduct directed at United Artists' legal representatives and employees is

8  warranted and should be issued immediately.

9      **C.**    **The Balance of the Equities Weighs in United Artists' Favor**

10      The balance of the equities weighs in favor of granting United Artists' motion.

11  Importantly, as the court in *Myart v. Taylor* recognized under similar circumstances,

12  an injunction narrowly tailored to prohibit threatening and harassing conduct against

13  an opposing party would not prevent Mr. Schramm from effectively defending his

14  case or communicating with United Artists.  2016 WL 5376227, at *5.  Moreover,

15  "an injunction does not prevent Mr. [Schramm] from expressing his views about

16  [United Artists], so long as he does so in a manner that does not constitute personal

17  harassment." *Id.*  Accordingly, United Artists has satisfied the third criterion for the

18  issuance of a TRO and preliminary injunction.

19      **D.**    **An Injunction is in the Public Interest**

20      The public interest would likely be furthered by the issuance of a TRO and a

21  preliminary injunction in this case.  First, Mr. Schramm's harassment of United

22  Artists' counsel threatens to interfere with this litigation, and an injunction would help

23  ensure the fair administration of justice, which furthers the public interest.  Second,

24  the acts sought to be enjoined are clearly harassing and have been declared unlawful

25  and against the public interest by the State of California.  Cal. Civ. Proc. Code § 527.6.

26  An injunction will serve to uphold state law and is therefore in the public's interest.

27  *Idaho v. Coeur d'Alene Tribe*, 49 F. Supp.3d 751, 764 (D. Idaho 2014), *aff'd*, 794 F.3d

28

1039 (9th Cir. 2015).  United Artists has therefore met the fourth criterion for the issuance of a TRO and preliminary injunction.

### E.   Any Bond Requirement Should Be Minimal

Fed.R.Civ.P. 65 requires the moving party to post a bond before the issuance of a preliminary injunction "in such sum as the court deems proper" for the payment of any costs or damages the defendant may incur from a potentially wrongful injunction.  However, the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted).  In this case, United Artists' likelihood of succeeding on the merits is high, making the likelihood of a "wrongful" injunction low.  Thus, if this Court requires a bond at all, it should be in the amount of $1,000.  *See, e.g.*, *Myart*, 2016 WL 5376227, at *5 (entering an injunction prohibiting harassing conduct and requiring a $1,000 bond as security).

## VI.   CONCLUSION

Based on the foregoing, United Artist respectfully requests that the Court modify its existing injunction, or in the alternative, issue a separate TRO and preliminary injunction prohibiting Mr. Schramm from threatening and harassing conduct directed at United Artists' employees and counsel.

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  October 3, 2019        By _____
                                  /s/ Jill M. Pietrini
                                  JILL M. PIETRINI
                                  PAUL A. BOST

                                  *Attorneys for Plaintiff*
                                  *and Counter-Defendant*
                                  UNITED ARTISTS CORPORATION

SMRH:4829-5574-3144.4